**FIFTH DIVISION**
**REESE, P. J.,**
**MARKLE and COLVIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. Please refer to the Supreme Court of Georgia Judicial Emergency Order of March 14, 2020 for further information at (https://www.gaappeals.us/rules).

**April 20, 2020**

# In the Court of Appeals of Georgia

A20A0173. LEGGETT v. THE STATE.

REESE, Presiding Judge.

At the conclusion of a bench trial, the State Court of Clayton County found Kenneth Leggett guilty of driving under the influence ("DUI") to the extent it was less safe to drive, DUI per se, and improper lane change.[1] Leggett appeals, arguing that the evidence was insufficient to support the DUI per se conviction because he was coerced into taking a breathalyzer test, that the record does not reflect that he knowingly and intelligently waived his right to counsel, and that the trial court erred in failing to merge the counts into a single offense for sentencing. For the reasons set forth infra, we vacate Leggett's convictions and remand for further proceedings not inconsistent with this opinion.

---

[1] See OCGA §§ 40-6-391 (a) (1), (5); 40-6-123 (a).

Viewed in the light most favorable to the verdict,[2] the record shows the following facts. At approximately 3:30 a.m. on August 18, 2017, a Morrow police officer noticed a car in front of him swerving back and forth between two lanes while traveling southbound on Interstate 75. The officer initiated a traffic stop, and approached the driver's side of the car where Leggett was sitting. Leggett smelled of alcohol and had bloodshot eyes and slurred speech. Leggett admitted to having consumed two beers approximately 30 minutes earlier.

During field sobriety tests, Leggett could not keep his balance, exhibiting five clues indicating impairment in the walk-and-turn test and four clues during the one-leg stand. During the latter test, Leggett stated "I'm more fucked up than I thought I was." The officer placed Leggett under arrest and read him verbatim the Georgia Implied Consent Warning for individuals over the age of 21. Leggett replied affirmatively, and the officer transferred him to the Lake City Police Department.

At the station, a Lake City police officer administered the Intoxilyzer 9000 test to Leggett twice. The first test indicated that Leggett had a blood alcohol content ("BAC") of .105, and the second test indicated a BAC of .099 grams.

---

[2] See *Wimberly v. State*, 302 Ga. 321, 323 (1) (806 SE2d 599) (2017).

2

After hearing testimony from the two officers and Leggett, who was proceeding pro se, the trial court denied Leggett's motion to suppress the results from the State-administered breath test, and found him guilty of improper lane change, as well as DUI per se and DUI less safe. This appeal followed.

> On appeal from a bench trial resulting in a criminal conviction, we view all evidence in the light most favorable to the trial court's verdict, and the defendant no longer enjoys the presumption of innocence. We do not re-weigh testimony, determine witness credibility, or address assertions of conflicting evidence; our role is to determine whether the evidence presented is sufficient for a rational trier of fact to find guilt beyond a reasonable doubt.[3]

With these guiding principles in mind, we turn now to Leggett's claims of error.

1. Leggett argues, and the State concedes, that Leggett was denied his constitutional right to counsel and, specifically, that the record does not reflect that he knowingly and intelligently waived this right. We agree.

On May 21, 2018, Leggett, represented by court-appointed counsel, appeared for a calendar call, at which time the trial court reset the case for Leggett to investigate the ramification of losing his driver's license and ultimately enter a plea.

---

[3] *Wimberly*, 302 Ga. at 323 (1) (citation and punctuation omitted).

On May 30, 2018, rather than enter the anticipated plea, Leggett expressed dissatisfaction with his appointed attorney. The trial court signed an order the following day permitting counsel to withdraw.

On the morning set for trial, after confirming that Leggett was not an attorney, the trial court asked Leggett whether he opposed his originally appointed counsel sitting in behind him during trial in an advisory capacity. Leggett stated that he did not oppose it, but appointed counsel expressed concern that Leggett's contention that counsel had been ineffective created a conflict.

The trial court agreed with counsel, at which point Leggett requested another court-appointed attorney. The trial court responded: "No. You don't get to pick and choose. You can hire whoever you want to. . . . But they better be ready in the next 10 or 15 minutes." The court then excused the originally appointed attorney.

At some point during jury selection that day, Leggett advised the trial court that he wanted a bench trial. After the court determined that Leggett knowingly and freely waived his right to a jury trial, the State requested that the court instruct Leggett's mother from saying anything during the trial. The following exchange occurred:

COURT: [Y]ou should be able to argue this on your own, if that's what you wanted to do, which you fired your attorney on your own. So I'm assuming that you are ready to try this case on your own; is that right?

LEGGETT: Yes, ma'am.

COURT: All right. So we will start this trial tomorrow.

The following morning, the trial court proposed that the parties stipulate that the facts presented at the hearing on Leggett's motion to suppress the results of the State-administered breath test be used for purposes of trial. After the parties agreed, the State presented the testimony of the arresting officer and the officer who had administered the breath tests.

The State rested its case, at which time the trial court advised Leggett regarding his right to testify. Leggett elected to testify, and the State recalled the arresting officer. The court denied the motion to suppress, and found Leggett guilty on all charges.

No evidence was presented that Leggett was "adequately informed of the nature of the charges against [him], the possible punishments [he] faced, the dangers of proceeding pro se, and other circumstances that might affect [his] ability to

adequately represent [himself]."[4] A criminal defendant has both a constitutional right to self-representation[5] and to counsel in any prosecution that could result in imprisonment.[6] "An unequivocal assertion of the right to represent oneself, made prior to trial, should be followed by a hearing to ensure that the defendant knowingly and intelligently waives the right to counsel and understands the disadvantages of self-representation."[7] The record should reflect a finding on the part of the trial court

---

[4] *Cook v. State*, 297 Ga. App. 701, 702 (678 SE2d 160) (2009) (citation and punctuation omitted); accord *Bush v. State*, 268 Ga. App. 200, 202 (2) (601 SE2d 511) (2004).

[5] *Thaxton v. State*, 260 Ga. 141, 142 (2) (390 SE2d 841) (1990); see also *Faretta v. California*, 422 U. S. 806, 835 (V) (95 SCt 2525, 45 LE2d 562) (1975) ("When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits. Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.") (citation and punctuation omitted); Ga. Const. of 1983, Art. I, Sec. I, Par. XII ("No person shall be deprived of the right to prosecute or defend, either in person or by an attorney, that person's own cause in any of the courts of this state.").

[6] *Middleton v. State*, 254 Ga. App. 648 (1) (563 SE2d 543) (2002); see also Ga. Const. of 1983, Art. I, Sec. I, Par. XIV ("Every person charged with an offense against the laws of this state shall have the privilege and benefit of counsel[.]").

[7] *Thaxton*, 260 Ga. at 142 (2).

that a defendant chose to waive his right to counsel after being made aware of his right to counsel and the dangers of proceeding pro se.[8] The State has the burden of demonstrating from the record that the defendant received sufficient information and guidance to make a knowing and intelligent decision whether to proceed pro se.[9]

Because the record does not demonstrate that Leggett knowingly and intelligently waived his right to counsel, we vacate Leggett's convictions and remand this case for further proceedings. On remand, Leggett "may choose to be represented by counsel or to waive [his] right to counsel and defend [him]self — after being made aware of the dangers of proceeding without counsel."[10]

2. Leggett challenges the sufficiency of the evidence to support his conviction for DUI per se. Relying on the Supreme Court of Georgia's decision in *Elliott v. State*,[11] Leggett argues that he was coerced into taking the State-administered breath test because the arresting officer advised him that a refusal to take the test could be offered into evidence against him at trial.

---

[8] *Middleton*, 254 Ga. App. at 648 (1).

[9] Id. at 649 (1).

[10] *Cook*, 297 Ga. App. at 703 (citation and punctuation omitted).

[11] 305 Ga. 179 (824 SE2d 265) (2019).

Under the Georgia Constitution, "[n]o person shall be compelled to give testimony tending in any manner to be self-incriminating."[12] While that provision "precludes admission of evidence that a suspect refused to consent to a breath test[,]"[13] "the right against self-incrimination under Paragraph XVI is not violated where the defendant voluntarily consents to the breath test rather than being compelled."[14]

"Determining the voluntariness of (or lack of compulsion surrounding) a defendant's incriminating statement or act involves considerations similar to those employed in determining whether a defendant voluntarily consented to a search[,]" including such factors as

> the age of the accused, his education, his intelligence, the length of detention, whether the accused was advised of his constitutional rights, the prolonged nature of questioning, the use of physical punishment, and the psychological impact of all these factors on the accused. In determining voluntariness, no single factor is controlling.[15]

---

[12] Ga. Const. of 1983, Art. I, Sec. I, Par. XVI.

[13] *Elliott*, 305 Ga. at 223 (IV) (E).

[14] *Fofanah v. State*, 351 Ga. App. 632, 635 (1) (832 SE2d 449) (2019) (citation and punctuation omitted).

[15] *Olevik v. State*, 302 Ga. 228, 251 (3) (b) (806 SE2d 505) (2017).

The sufficiency issue turns on whether the trial court erred in denying Leggett's motion to suppress the results of the State-administered breath test.[16] We cannot determine from the record before us whether the trial court erred in finding that Leggett voluntarily consented to the breath test. On remand, the trial court may consider Leggett's suppression argument in light of *Elliott*, which had not yet been decided when the trial court ruled on the motion.[17]

3. Because Leggett's convictions are vacated, Leggett's remaining claim of error is moot.

*Judgment vacated and case remanded. Markle and Colvin, JJ., concur.*

---

[16] See OCGA § 40-6-391 (a) (5) ("A person shall not drive or be in actual physical control of any moving vehicle while [t]he person's alcohol concentration is 0.08 grams or more at any time within three hours after such driving or being in actual physical control from alcohol consumed before such driving or being in actual physical control ended[.]"); *Wright v. State*, 338 Ga. App. 216, 217-224 (1) (789 SE2d 424) (2016) (reversing DUI per se conviction after holding that the trial court erred in failing to suppress the breath test results).

[17] See *State v. Turnquest*, 305 Ga. 758, 775-776 (5) (827 SE2d 865) (2019).